UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | |
|---|---|
| MARCELL DEON DEAN<br>Institutional ID No. 841252,<br>SID No. 5731788<br><br>       Plaintiff,<br><br>v.<br><br>JASON PRIETO, COIV,<br>*et al.*,<br><br>       Defendants. | CIVIL ACTION NO.<br>5:11-CV-013-BG<br>ECF |

**REPORT AND RECOMMENDATION**

*Pro se* Plaintiff Marcell Deon Dean, an inmate incarcerated by the Texas Department of Criminal Justice (TDCJ), filed this action *in forma pauperis* and pursuant to 42 U.S.C. § 1983 complaining of actions that occurred at the John Montford Psychiatric Unit (Montford Unit). The undersigned held a hearing pursuant to *Spears v. McCotter*, 766 F.2d 179, 181–82 (5th Cir. 1985), considered Dean's testimony and the allegations in his Complaint, and reviewed authenticated records from TDCJ. Based on Dean's allegations, the authenticated records, and the applicable law, it is recommended that the United States District Court dismiss Dean's Complaint pursuant to the statutory directives in 28 U.S.C. § 1915.

**I.     Standard of Review**

The *in forma pauperis* statute, 28 U.S.C. § 1915, permits an individual who is not financially able to pay the court filing fee at the time of bringing his complaint to nonetheless file his complaint and pay the filing fee as "his ability to pay allows." *Banos v. O'Guin*, 144 F.3d 883, 884–85 (5th Cir. 1998). The statute is "'intended to guarantee that no citizen shall be denied an opportunity to commence, prosecute, or defend an action, civil or criminal, in any court of the United States,

solely because . . . poverty makes it impossible . . . to pay or secure the costs' of litigation." *Denton v. Hernandez*, 504 U.S. 25, 31, 112 S. Ct. 1728, 118 L. Ed. 2d 340 (1992) (quoting *Adkins v. E. I. DuPont de Nemours & Co.*, 335 U.S. 331, 342, 69 S. Ct. 85, 93 L. Ed. 43 (1948)). Thus, Congress enacted the statute to ensure that indigent individuals are able to access the courts. *Denton*, 504 U.S. at 31. Congress, however, also recognized that an individual who is allowed to file complaints without cost, "'unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits.'" *Id.* (quoting *Neitzke v. Williams*, 490 U.S. 319, 324, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989)). In order to guard against abuse that may ensue from the filing of such lawsuits, Congress mandated that a complaint filed *in forma pauperis* be dismissed if it is determined that the allegation of poverty is untrue or that the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2) (2012); *see Neitzke*, 490 U.S. at 324.

The court may dismiss a complaint brought *in forma pauperis* under the standard set forth in Section 1915(e)(2) before service of process on the defendants. *Brewster v. Dretke*, 587 F.3d 764, 767 (5th Cir. 2009); *see also* 28 U.S.C. § 1915A (directing dismissal of claims brought by prisoners against governmental entities or officers before service of process). The court has broad discretion in determining whether a complaint brought *in forma pauperis* should be dismissed and may dismiss such a complaint based on the plaintiff's allegations, testimony obtained at a hearing held pursuant to *Spears*, 766 F.2d at 181–82, and authenticated prison records. *See Banuelos v. McFarland*, 41 F.3d 232, 234 (5th Cir. 1995) (acknowledging that dismissals may be based on adequately identified or authenticated records).

## II.     Dean's Claims

Dean claims that he was subjected to hate crimes that culminated in Defendant Jason Prieto and other prison officers using excessive force against him on August 21, 2010. Dean further claims that Defendant Eric Pena participated in the hate crimes and retaliated against him and that Defendant Thomas Stevens refused to take action to stop the wrongful conduct. In a supplement to his Complaint, Dean claims that Defendant A. Gonzales dragged him down a hallway and assaulted him.

## III.    Dean's Claims of Harassment, Retaliation, and Hate Crimes

At the *Spears* hearing Dean claimed the wrongful actions against him began in November 2009. He claimed that there were only two other black inmates on his cell run at that time and that one of the black inmates, who was involved in altercations with officers, asked him to participate in an altercation. Dean claims that because he refused to participate, Defendant Pena and other officers thereafter harassed and retaliated against him. He specifically testified that Pena harassed him by calling him names and taking his food trays.

According to Dean, Pena was moved to another shift after Dean's family complained to prison administration. He claims, however, that other officers took Pena's place and continued the harassment. He particularly claimed that the harassment took the form of denial of food. He contends that he was not fed for a period of two months; according to Dean, he was "not fed at all" during September and October of 2010.

Dean's claim that Pena retaliated against him should be dismissed. In order to establish a retaliation claim, the inmate must point to the exercise of specific constitutionally protected activity that resulted in the alleged retaliation. *McDonald v. Steward*, 132 F.3d 225, 231 (5th Cir. 1998).

3

Complaining about the conduct of prison officials in grievances, for example, is constitutionally protected activity. *Woods v. Smith*, 60 F.3d 1161, 1164 (5th Cir. 1995). The purpose of hearing claims of retaliation is "to ensure that prisoners are not unduly discouraged from exercising constitutional rights." *Morris v. Powell*, 449 F.3d 682, 686 (5th Cir. 2006) (citation omitted). Dean has not claimed that he was retaliated against because he exercised a constitutional right. In addition, he has not alleged that any acts on the part of Pena or any other officer deterred him from exercising any of his constitutional rights. He has therefore failed to state an actionable claim. *See id.* ("Retaliation against a prisoner is actionable only if it is capable of deterring a person of ordinary firmness from further exercising his constitutional rights.").

Dean's testimony that he was not fed anything in September and October 2010 does not change this conclusion because the claim is factually frivolous. There is no disputed fact as to Dean's health during and after the time he claims he was not fed: Dean has not alleged and the authenticated records do not show any fluctuation in his weight at any time during or after the two-month period of time. Dean's claim that he was not fed anything at all during the two-month period is a claim that can be characterized as irrational and wholly incredible; it should, therefore, be dismissed as factually frivolous. *See Denton*, 504 U.S. at 33 (acknowledging that a factually frivolous claim is one that is fanciful, fantastic, or delusional and therefore clearly baseless).

Dean's allegation that Pena and other officers harassed him does not state a constitutional claim. *Calhoun v. Hargrove*, 312 F.3d 730, 734 (5th Cir. 2002) (holding that allegations of mere harassment or verbal abuse do not state viable constitutional claims). Finally, Dean's claim that Pena and other officers committed hate crimes against him should be dismissed because § 1983 is not the proper vehicle for bringing a criminal action. "Private citizens have no right to institute

4

criminal prosecutions in federal court." *Allen v. Sanders,* No. 2:98–CV–0065–J, 1998 WL 318841, at *9 (N.D. Tex. June 4, 1998) (citation omitted). The prosecution of a criminal action in a federal court lies solely within the discretion of the Attorney General of the United States. *Id.* A plaintiff wishing to institute an action under the Hate Crimes Act should be referred to the United States Attorney. *Id.*

IV.     **Dean's Claims of Excessive Use of Force**

The first incident Dean complains of occurred on August 10, 2010. The authenticated records from TDCJ show that at that time Dean was placed in isolation for treatment of various psychiatric illnesses and symptoms. Medical personnel were treating Dean for schizophrenia, major depression, mania, delusions, severe psychotic symptoms, panic disorder, post-traumatic stress disorder, and obsessive compulsive disorder. According to the authenticated records, Dean has above-average intelligence but exhibits disorganized thoughts and paranoia as well as thoughts encompassing "a network of bizarre persecutory and somatic delusions" because of his psychiatric conditions.

Dean indicated in his Complaint, attachments to his Complaint, and in his testimony that the use of force occurred as he was being escorted from his isolation cell to recreation. The authenticated records are in accord with Dean's testimony and show that the use of force occurred as Defendant Prieto and another officer escorted Dean in hand restraints to recreation on August 22, 2010. According to the authenticated records, as Dean, Prieto, and the other officer reached doors at the end of the cell hall, Dean pulled away and lunged toward Prieto's chest. The officers pushed Dean against the wall, Dean attempted to pull away from the officers, and the officers forced Dean to the floor. The officers called for a supervisor and a video camera while they held Dean in place.

Dean claims that the officers beat him. He claimed in grievances he attached to his Complaint that his forehead was bleeding after the incident, and he testified that the officers hit him and that there was blood all over his clothing, his face, and the floor after the incident.

TDCJ provided the court with a disc of photographs and disc of a video that were made after the incident. In the video Dean is seen restrained on the floor with two officers holding him down at the shoulders and one officer holding his ankles. Dean is wearing white boxer shorts and there is what appears to be a white sheet lying within inches of his upper torso and face. The three officers restrain Dean on the floor without incident for approximately six minutes until other officers arrive at the scene. One of the arriving officers asks Dean to stand and walk to his cell and Dean claims that he is unable to walk. The officer asks Dean to turn to his side, and Dean refuses to do so. The officers turn Dean to his side and Dean begins kicking backward at the officer who had held his ankles and who was crouched at his feet. A group of officers pick up Dean and carry him down the hall to his cell. Once in his cell, a nurse visually examines Dean and turns to the camera and states that Dean does not have any physical injuries. Another officer arrives at the scene and takes the photos that are contained on the other disc. Throughout the footage on the video, Dean contends that he is bleeding and needs medical attention. The footage on the video, however, contemporaneously belies Dean's contentions. No blood is visible anywhere on Dean's clothing, face, or the floor in the video footage.

Based on the movements Dean made when he was turned to his side on the hall floor, the nurse's statement, and the visual evidence in the video footage and photographs, Dean did not suffer any injuries as a result of the use of force. For that reason, his claim should be dismissed. The Eighth Amendment's prohibition against cruel and unusual punishment does not extend to

6

*de minimis* uses of physical force, so long as the force is not the sort repugnant to the conscience of mankind. *Wilkins v. Gaddy*, — U.S. —, 130 S. Ct. 1175, 1178, 175 L. Ed. 2d 995 (2010) (citing *Hudson v. McMillian*, 503 U.S. 1, 9, 112 S. Ct. 995, 117 L. Ed. 2d 156 (1992)). Thus, not every malevolent touch by a prison guard gives rise to a constitutional claim; a prisoner who complains of a push or shove does not, in the absence of a "discernable injury," state an excessive force claim. *Wilkins*, 130 S. Ct. at 1178. The United States Supreme Court has acknowledged that the extent of injury the inmate suffered is relevant to determining whether the force at issue violated the Constitution. *Id.* Although the core judicial inquiry in an excessive use of force case is whether the force was applied maliciously and sadistically or in a good faith effort to restore discipline, the extent of the plaintiff's injuries may provide some indication of the amount of force applied; thus, the absence of a significant injury is a factor the court must consider. *Id.* The Court of Appeals for the Fifth Circuit has likewise held that "courts may look to the seriousness of the injury to determine whether the force could have plausibly been thought necessary, or instead evinced . . . unjustified infliction of harm . . ." *Brown v. Lippard*, 472 F.3d 284, 387 (5th Cir. 2006) (internal quotations and citation omitted). An inmate fails to state an excessive use of force claim when there is no physical injury or when the injury is extremely minor. *Id.* (citations omitted). In short, there must be proof of some injury, whether significant or insignificant. *Knight v. Caldwell*, 970 F.2d 1430, 1432 (5th Cir. 1992).

In this case there was no injury at all. Based on the absence of any injury, it must be concluded that the use of force was applied in a good faith effort to restore discipline rather than maliciously and sadistically for the purpose of causing harm. The district court should therefore dismiss Dean's claim against Prieto.

7

On the same grounds the district court should dismiss the excessive use of force claim Dean brought in his supplement against Defendant Gonzales. Dean testified at the *Spears* hearing that the assault was "not as bad" as the one he claims occurred in August 2010, which resulted in no injury at all. It must, therefore, be concluded that Dean also suffered no injury as a result of the force he alleges Gonzales used.

Finally, Dean's claim against Defendant Stevens should be dismissed. Dean testified that he wrote to Stevens and asked him to move him to another cell because of the problems he experienced with officers on his cell wing. To the extent Dean finds fault with the manner in which Stevens addressed his request, his claim is without merit. There is no law requiring prisoner officials to respond to prisoner complaints in a particular fashion. *See Geiger v. Jowers*, 404 F.3d 371, 373–74 (5th Cir. 2005) (holding that a prisoner has no liberty interest in having his grievances resolved to his satisfaction). To the extent Dean claims his rights were violated because he was not moved to another cell, the claim is likewise without merit. A prisoner does not have a right to choose the place of his incarceration. *See Jackson v. Cain*, 864 F.3d 1235, 1250 (5th Cir. 1989) (holding that a prisoner has no liberty interest in residence at one prison or another).

## V.    **Recommendation**

Based on the foregoing discussion, the undersigned recommends that the District Court dismiss Dean's Complaint and all claims therein against all Defendants. The undersigned further recommends that any pending motions be denied as moot.

## VI.    **Right to Object**

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file

specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1) (2012); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which the objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

Dated:   May 10, 2012.

NANCY M. KOENIG
United States Magistrate Judge